IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARTHANN BUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05cv378-VPM |
| | ) | |
| TEACHERS INSURANCE AND | ) | |
| ANNUITY ASSOCIATION OF | ) | |
| AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On 24 July 2006, the court conducted a nonjury trial that lasted approximately five hours (Doc. # 48-1). This order constitutes the final ruling on the merits of the issues that were remaining for trial.

The parties stipulate that this court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income and Security Act ["ERISA"], 29 U.S.C. 1001, *et seq.* (Trial Transcript ["Tr."] 3) and diversity jurisdiction pursuant to 28 U.S.C. § 1332. *Id.* Pursuant to 28 U.S.C. 636(c), Rule 73 of the FEDERAL RULES OF CIVIL PROCEDURE, and Local Rule 73.1, the parties have consented to the jurisdiction of the Magistrate Judge to preside over all proceedings, including a nonjury trial (Docs. # 11-13).

**I.    PROCEDURAL POSTURE**

*A.    Previous Substantive Ruling*

It is helpful to introduce this case by reference to the court's summary of events in its

previous order disposing of a motion for summary judgment filed by plaintiff Marthann Bush ["Marthann"].[1]

> Pursuant to *Alabama Rules of Civil Procedure*, Marthann filed this action in state court as a Bill in the Nature of Interpleader seeking an order requiring the defendants to file their claims against her (Exhs. Attch. to Doc. # 1). Ala. R. Civ. P. 22. The nature of the dispute concerns, essentially, the identity of the rightful beneficiaries to several annuity contracts between John Jackson Bush ["Bush"], now deceased, and defendant[s] [Teachers Insurance and Annuity Association of America and College Retirement Equities Fund, collectively] TIAA-CREF.
>
> Without contesting its liability for the amounts owed under the contracts, TIAA-CREF responded with a counterclaim for interpleader, indicating its willingness to pay the benefits to the rightful beneficiaries as well as its inability to "safely" determine the rightful beneficiaries (Doc. # 3). The Bush children (TIAA-CREF's co-defendants, Bonita Bush Flynt ["Flynt"], John Martin Bush ["John"], and Henry Brackin Bush ["Henry"], collectively) responded with an answer and asserted state common law counterclaims against Marthann for conversion, fraud and deceit (Doc. # 7). They also seek (1) a judicial declaration pursuant to 28 U.S.C. § 2201 (2000) that they are the rightful beneficiaries to all of the contracts at issue, and (2) an order directing co-defendant TIAA-CREF to distribute the funds accordingly. *Id.*

(Doc. # 41-1, pp. 3-4).[2]

Marthann filed a motion for summary judgment on the Bush children's claim for declaratory relief with respect to two of the six annuity contracts Bush had executed. (Docs.

---

[1] The court's policy is to refer to litigants by their surnames. However, because three of the litigants in this case have the same surname, the court uses their first names solely to distinguish them, with the exception of Flynt.

[2] The court adopts the references to the parties used in Document # 41.

# 23, 24; Doc. # 41, p. 4). These contracts were designated as C8370450-8 and U837045-6 and have been referenced by the court as contracts C8 and U8. (Doc. # 41, p. 4).

On 7 July 2006, the court granted Marthann's motion after concluding that she was at all times the rightful beneficiary of contracts C8 and U8 and instructed TIAA-CREF to distribute the funds payable to Marthann in accordance with the terms of the contracts upon entry of final judgment in this case. *Id.* at 9.

## B.     *Issues Determined at Trial*

The only issues remaining at the beginning of the bench trial were the Bush children's state law claims against Marthann, their request for a declaration that they are the rightful beneficiaries of the remaining annuity contracts, and TIAA-CREF's request to be discharged from liability.[3] *Id.*

At the outset, Marthann conceded that she had no claim to or interest in the remaining annuity contracts, those numbered D5299781, V5299788, K8393668, J8393660. Therefore, the Bush children are entitled to a declaration that they are entitled to receive the benefits of these contracts. (Tr. 13). The court cannot render a more specific, or "itemized", ruling,

---

[3]Until a final order is entered disposing of this case, TIAA-CREF is still a party to this lawsuit. Nevertheless, the court excused TIAA-CREF from appearing at trial, and the other parties did not object and do not contend that TIAA-CREF is in any way liable to them beyond its responsibility to comply with the law and the terms of the contracts at issue. Because TIAA-CREF remains as a party, and this lawsuit is still active until a final order is entered, TIAA-CREF's motion for attorney fees (Doc. # 49), filed approximately one week after the nonjury trial, is wholly premature and will be denied without prejudice on those grounds. Fed. R. Civ. P. 54(d).

because the parties never submitted the D, V, K, and J contracts or the relevant portions thereto. Thus, the court is unable to identify, with precision, the Bush children who are the appropriate beneficiaries. The Bush children collectively succeed nonetheless, and TIAA-CREF is required to distribute the funds owed to them in accordance with the law and the terms of the contracts at issue.

C.     **Remaining Issue After Trial**

All that remains for decision at this time are the Bush children's tort claims,[4] which the Bush children must prove to the court's reasonable satisfaction by substantial evidence. Ala. Code 12-21-12(a); *Ala. Pattern Jury Instructions* 18.01-.04 (fraud and deceit), 39.00A

---

[4]Alabama law governs the substantive matters related to the tort claims in this case. The ALABAMA RULES OF CIVIL PROCEDURE require a party wishing to apply the law of another state to provide "reasonable written notice." Ala. R. Civ. P. 44.1. Although Alabama's procedural rules do not apply in this case, its choice of law rules do. **Lawrence v. Household Bank (SB), N.A.**, 397 F. Supp. 2d 1332, 1335 (M.D. Ala. 2005) (citing **Klaxon Co. v. Stento Elec. Mfg. Co.**, 313 U.S. 487, 496 (1941)). The Alabama Supreme Court has held that where a potential argument exists for the application of a foreign state's law, the parties' failure to make such an argument or comply with rule 44.1 allows the court to apply the law that the parties assume to be controlling. **Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.**, 851 So.2d 466, 475 (Ala. 2002); *see also* **Abercrombie v. Nashville Auto Auction, Inc.**, 541 So.2d 516 (Ala. 1989) (concluding that "Alabama's substantive law has, by virtue of acquiescence of the parties, become the law of the case" when no other state's law had "been asserted as controlling").

Neither party contends that the law of any other state besides Alabama governs the tort claims. All parties are represented by members of the Alabama Bar and are expected to be familiar with Rule 44.1. Moreover, the Bush children certainly have evidenced their awareness of choice of law issues by arguing in their opposition to Marthann's motion for partial summary judgment that Georgia law governs the interpretation of the document appointing John as attorney in fact for Bush. (Doc. # 33, p. 4-5). That Marthann and the decedent were at the relevant time residents of Alabama, the claims against Marthann were brought in Alabama, and the parties are represented by local counsel lead the court to conclude that the parties acquiesce in the application of Alabama law to the tort claims.

(conversion).[5] For the reasons discussed herein, the court finds that the Bush children have failed to meet their burden.

## II.   DISCUSSION

### A.   *Allegations and Relevant Facts*

According to the Bush children, Marthann fraudulently executed a power of attorney naming herself as attorney in fact for their father. She then submitted the power of attorney to TIAA-CREF to accomplish the following objectives: (1) changing the beneficiaries on the four annuity contracts at issue, (2) substituting herself as the primary beneficiary in place of the Bush children, and (3) relegating the Bush children to the status of contingent beneficiaries.

Upon discovering Marthann's alleged misdeeds, the Bush children sought to execute their own change of beneficiary forms concerning the contracts that were the subject of the court's earlier order granting Marthann's motion for partial summary judgment. The Bush children sought to eliminate Marthann as the primary beneficiary of one of the contracts and to add a primary beneficiary to the other contract, thereby reducing Marthann's interest by

---

[5]The burden of proof of the tort claims also is governed by Alabama law. *Coastal Plains Feeders, Inc. v. Hartford Fire Ins. Co.*, 545 F.2d 448, 451 n.5 (5th Cir. 1977), *cited in Shaps v. Provident Life & Accident Ins. Co.*, 244 F.3d 876, 882 n.1 (11th Cir. 2001) (discussing diversity jurisdiction cases); *see also McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004) (discussing the exercise of supplemental jurisdiction). To be entitled to punitive damages, the Bush children must prove by clear and convincing evidence that Marthann "consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to" them. Ala. Code § 6-11-20(a).

half. (Defs.' Exs. 32-33).

TIAA-CREF informed the Bush children, however, that the company would not accept their requested changes due to Marthann's power of attorney. Nevertheless, the Bush children did eventually submit the change of beneficiary forms but waited until February 2005, more than two months after Bush died, to do so.[6] (Tr. 46-47)

The evidence introduced at trial was sufficient to demonstrate that at all relevant times prior to Bush's death, John was Bush's attorney in fact and the only person authorized to act on Bush's behalf (Tr. 13-14, 17-18; Defs'. Ex. 30). Marthann did indeed convince Bush to execute a power of attorney naming Marthann as attorney in fact, but this document conferred no such power for at least two reasons: (1) it did not specifically negate the power of attorney naming John as attorney in fact, as the earlier power of attorney expressly required; and (2) Bush was not competent at the time to execute the power of attorney in Marthann's favor. (Tr. 13-14, 17-18, 24, 30-31; Defs'. Exs. 12-21). Marthann knew that Bush was not competent when she attempted to have him execute a valid power of attorney and, therefore, knew or should have known that the power of attorney was meaningless (Defs'. Ex. 21).

Prior to Bush's death, Marthann submitted the void power of attorney along with change of beneficiary forms to TIAA-CREF with the intent of deceiving TIAA-CREF into

---

[6] At the beginning of the nonjury trial, the court deemed the documentary evidence submitted by the Bush children genuine and admissible and all objections thereto waived due to Marthann's failure to file written objections to the evidence as required by the court's scheduling order (Doc. # 20, p.3).

believing that she was Bush's attorney in fact and inducing TIAA-CREF to change the beneficiaries designated on the contracts at issue (Defs'. Exs. 5-9, 22, 23, 28). TIAA-CREF accepted the power of attorney form as legitimate and changed the beneficiaries but distributed no funds after Bush's death due to the conflict between Marthann and the Bush children, and the Bush children's allegations that Marthann's power of attorney was fraudulent. Defs'. Exs. 5, 9.

The Bush children failed to meet their burden of proving to the court's reasonable satisfaction, *inter alia*, that Marthann made any misrepresentations to Bush or the Bush children themselves.[7]

### A.    *Fraud*

Although Alabama provides a cause of action for negligent misrepresentation, the Bush children have charged Marthann with committing "intentional fraud" (Doc. # 7, p. 7). Intentional fraud is defined as a "[m]isrepresentation[] of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party." Ala. Code § 6-5-101. It also includes "[s]uppression of a material fact which the party is under an

---

[7]Testimony at trial tended to demonstrate that Marthann told Bush that she needed the power of attorney to pay bills (Tr. 72-125). Although the Bush children's theory obviously is that Marthann's stated intent was untrue, they failed to produce evidence that at the time Marthann convinced Bush to execute the power of attorney, she intended to do more than simply pay her and Bush's bills.

obligation to communicate . . . ." Ala. Code § 6-5-101.[8]

To prove fraud, the Bush children must demonstrate (1) a false representation made willfully or recklessly (2) concerning a material existing fact (3) upon which the plaintiff justifiably relied (4) to his or her detriment. *See Crowne Investments, Inc. v. Bryant*, 638 So.2d 873, 876-77 (Ala. 1994). Furthermore, they must demonstrate that Marthann owed them a legal duty. *See, e.g.*, *Dickinson v. Land Developers Const. Co., Inc.*, 882 So.2d 291, 302 (Ala. 2003).

The Bush children's success in proving that Marthann made misrepresentations willfully or recklessly to TIAA-CREF is not sufficient to succeed on their fraud claim. The evidence fails to establish that the *Bush children* justifiably relied upon the misrepresentation (i.e., Marthann's void power of attorney) either directly or indirectly.[9] On

---

[8]For ease of discussion, hereinafter, "misrepresentation" or "false representation" includes suppression of material facts.

[9]While the court recognizes that a fraud claim may arise from a misrepresentation made to a third party, the Bush children must nevertheless demonstrate reliance on Marthann's misrepresentations. *Delta Health Group, Inc. v. Stafford*, 887 So.2d 887, 899 (Ala. 2004). Moreover,

> where a "third party" fraudulent misrepresentation" is alleged, statements to persons other than the plaintiff will support the fraud allegations only when there is sufficient evidence of an intent on the part of the speaker to communicate to the third party in such a way as to induce the plaintiff to act.

*Seward v. Dickerson*, 844 So.2d 1207, 1212 (Ala. 2002).

The Bush children contend that but for Marthann's submission of the problematic power of attorney, they would have submitted changes of beneficiaries that would have, in effect, rendered them the beneficiaries of all of the contracts at issue in this case, including the two that

the contrary, it is clear that the Bush children never believed that Marthann was Bush's attorney in fact and always believed that John was Bush's attorney in fact (Tr. 25-26; Doc. # 32, pp. 6-7).

In addition, the Bush children have utterly failed even to suggest that Marthann owed *them*, as opposed to their father or, perhaps, his estate or TIAA-CREF, any legal duty whatsoever.  The court takes judicial notice of a *possibility* that Marthann owed the Bush children a legal duty not to interfere with their expectancy in the benefits of the contracts at issue.  **Holt v. First Nat'l Bank of Mobile**, 418 So. 2d 77, 79-81 (Ala. 1982) (indicating a willingness to recognize a cause of action for tortious interference with an expectancy or inheritance under appropriate circumstances).  Their failure to argue that she did in fact owe them a legal duty or to attempt to state a cause of action for tortious interference, when considered in conjunction with the uncertainty of the existence of such a duty, relieves the court of the burden of determining whether such a duty exists.

---

were the subject of the court's previous order granting Marthann partial summary judgment (Tr. 4-11).  Assuming without deciding that reliance of this nature would suffice to support a fraud claim (the court has no reason to believe that it does), the Bush children failed to satisfy the court that their delay in sending the change of beneficiary forms was due to Marthann's submission of the power of attorney or TIAA-CREF's statements that it would not accept the Bush children's change of beneficiary forms (Tr. 4-11, 43).  The evidence tended to show that their reason for not sending the forms was their father's death and the belief that the forms would not be accepted after he had died (Tr. 45-47; Defs'. Ex. 10).  At trial, Flynt admitted that once she realized that her father's death did not invalidate the changes, which were executed prior to his death, she submitted the forms notwithstanding TIAA-CREF's policy regarding the power of attorney (Tr. 46-47).  Flynt further stated that, notwithstanding TIAA-CREF's stated, preemptive refusal to acknowledge any change of beneficiary forms submitted by the Bush children or to even send the Bush children the requisite forms, Flynt downloaded the forms from the Internet and walked John through their execution (Tr. 37-38, 65-66).

Regardless, assuming *arguendo* that such a duty did exist, the Bush children's failure to prove justifiable reliance sufficiently undermines their fraud claim.  Therefore, the Bush children's fraud claim fails.

### B.     Deceit (Fraudulent Deceit)

Similarly to fraud, a deceit claim requires evidence that the defendant made misrepresentations or deceptively concealed facts with an intent "to induce another to act, and upon which he does act to his injury." Ala. Code § 6-5-103.  For the same reasons that the Bush children failed to prove their fraud claim, they also failed to prove their deceit claim.  The Bush children failed to introduce evidence that Marthann's intent was for the *Bush children* to act or to refrain from acting.  Moreover, they failed to introduce evidence that they did act, either directly or indirectly, in reliance upon her alleged misrepresentations. *See* footnote 8.

### C.     Conversion

Conversion is statutorily defined as "any unlawful deprivation of or interference with" an owner's possession "of personalty." Ala. Code § 6-5-260.  As the law has developed over time and with the application of common law principles,

> to establish conversion, a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property. **Covington v. Exxon Co., U.S.A.**, 551 So.2d 935 (Ala. 1989).  The plaintiff must establish that the defendant

> converted specific personal property to the defendant's own use and beneficial enjoyment. The plaintiff asserting conversion could also show that the defendant destroyed or exercised dominion over property to which, at the time of the destruction or exercise of dominion, the plaintiff had a general or specific title and of which the plaintiff was in actual possession or to which the plaintiff was entitled to immediate possession.

*Huntsville Golf. Dev., Inc. v. Ratcliff, Inc.*, 646 So.2d 1334 (Ala. 1994).

The Bush children have failed to submit evidence that at the time Marthann changed the beneficiaries on the contracts in question, they, or any one of them, had "general or special title to the [annuity contracts or benefits thereto], and the possession or immediate right of possession" of same, as Alabama requires. *Id.*; *see also*, *e.g.*, *Hamilton v. Hamilton*, 51 So.2d 13, 18 (Ala. 1951). One's status as a beneficiary, without more, is not sufficient to establish the appropriate level of ownership. *See generally*, *id.*

Therefore, the Bush children have failed to prove their claim for conversion.

### III.   CONCLUSION

For the reasons discussed herein, the Bush children are entitled to a declaration that they are the rightful beneficiaries to the contracts remaining in dispute. They have failed, however, to offer evidence necessary to prove their tort claims against Marthann, and Marthann is therefore entitled to a judgment in her favor. Therefore, it is hereby

ORDERED as follows:

1)   The court DECLARES that Bonita Bush Flynt, John Martin Bush, and Henry Brackin Bush are the rightful beneficiaries to the contracts designated as

11

       D5299781, V5299788, K8393668, J8393660;

2)     The court FINDS in favor of Marthann Bush and against Bonita Bush Flynt, John Martin Bush, and Henry Brackin Bush on all of the tort claims asserted against her and will enter final judgment reflecting this finding concurrent with this Memorandum Opinion and Order;

3)     Upon entry of final judgment in this case, interpleader TIAA-CREF shall distribute immediately the funds payable to the beneficiary(ies) of the aforedescribed contracts in accordance with this order, all applicable federal and state laws, and the terms of said contracts;

4)     TIAA-CREF's Motion for Attorney Fees (Doc. # 49) is DENIED without prejudice.

5)     The Clerk of the Court is DIRECTED to close this case and terminate all pending motions.

DONE this 30th day of October, 2006.

                                         /s/ Vanzetta Penn McPherson
                                         VANZETTA PENN MCPHERSON
                                         UNITED STATES MAGISTRATE JUDGE