IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARTHANN BUSH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  1:05CV378-WC |
| ) | |
| TEACHERS INSURANCE and ) | |
| ANNUITY ASSOCIATION OF ) | |
| AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendant/Counterclaimant Teachers Insurance and Annuity Association of America and College Retirement Equities Fund's (TIAA-CREF) Motion for Attorneys' Fees (Doc. #64).  Pursuant to Rules 22 and 54 of the Federal Rules of Civil Procedure and federal practice, TIAA-CREF requests this Court award attorneys' fees in the amount of $35,500.00, plus $1,114.16 of disbursements.  For the reasons stated below, the Court DENIES TIAA-CREF's request for attorneys' fees.

**I.     BACKGROUND**

This case originated in the Circuit Court of Houston County, Alabama.  Plaintiff Marthann Bush filed a Bill in the Nature of Interpleader, to have TIAA-CREF interplead the contract benefits held by TIAA-CREF to the Houston County Circuit Court.  On 25 April 2005, TIAA-CREF removed the case to this Court (Doc. #1) and filed a Counterclaim and Complaint for Interpleader.  (Doc. #3).  In the Counterclaim and Complaint for Interpleader,

TIAA-CREF suggested it could immediately pay the contract benefits to the Court or continue to hold the assets. *Id*. At a 1 August 2005, scheduling conference, the parties agreed TIAA-CREF would hold the assets.

The non-jury trial in this case occurred on 24 July 2006. On 31 July 2006, TIAA-CREF filed a Motion for Attorneys' Fees. On 30 October 2006, the Court issued a Memorandum Opinion and Order, and in footnote 3 of the Order, the Court denied TIAA-CREF's Motion for Attorneys' Fees without prejudice, stating that TIAA-CREF's Motion for Attorneys' Fees was wholly premature. (Doc. #54 at 3).

On 30 October 2006, the Court issued a Final Judgment. On 29 November 2007, this case was reasigned to the undersigned due to the retirement of the Honorable Vanzetta P. McPherson. (Doc. #60). TIAA-CREF subsequently filed a Motion to Alter or Amend Judgment, which was granted on 11 December 2006, and the amended Final Judgment was issued on 11 December 2006. (Doc. #63).

Plaintiff filed her response to the Motion for Attorneys' Fees on 12 January 2007 (Doc. # 68), and Defendants Bonita Bush Flynt, John Martin Bush, and Henry Brackin Bush filed an Objection to the Motion on 15 January 2008. (Doc. #69). On 22 January 2007, TIAA-CREF filed a Reply (Doc. #75). On 28 February 2008, this Court ordered (Doc. #78) the Motion for Attorneys' Fees stayed pending the appeal in this case.

The United States Court of Appeal for the Eleventh Circuit (Eleventh Circuit) entered Judgment on 5 December 2007, affirming the decision of this Court. An Order lifting the

stay in this case will be filed contemporaneous to this Order.

**II.   DISCUSSION**

Federal practice dictates "[t]he award of costs and attorneys' fees in an interpleader action [] generally [] imposed against the party who has benefited from the interpleader action. The usual practice is to tax the costs and fees against the interpleader fund." *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497-98 (11th Cir. 1986) (internal citation omitted).

Any award of attorneys' fees is at the discretion of the district court, "and is to be applied consistent with equitable principles." *Harris Corp. v. Dunn*, 2006 WL 1275062, *6 (M.D. Fla. 2006). The Eleventh Circuit has enumerated three reasons for the justification of attorneys' fees in interpleader actions: (1) an "interpleader action often yields a cost-efficient resolution;" (2) "the stakeholder in the asset often comes by the asset innocently;" (3) "fees for the stakeholder typically are quite minor and therefore do not greatly diminish the value of the asset." *In re Mandalay Shores Co-op. Hous. Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994). Here, it appears the interpleader action was cost effective. However, "while [TIAA-CREF] is 'innocent,' it has also come to the asset in the normal course of business." *Life Investors Ins. Co. of Am. v. Childs*, 209 F. Supp. 2d 1255, 1256 (M.D. Ala. 2002).

Attorneys' fees are not warranted "when a stakeholder's interpleader claim arises out of the normal course of business" and "this standard typically is applied to insurance

companies." *Mandalay,* 21 F.3d at 383. As the court in *Mandalay* explained:

> The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds-disputes that arise with some modicum of regularity. In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award.

*Id*.

TIAA-CREF argues the "normal course of business" exception does not apply to them for three reasons. First, because TIAA-CREF is a not-for-profit corporation, "all expenses incurred by TIAA-CREF in this case will adversely affect the return not of stockholders but of the actual retirement plan participants of TIAA-CREF." (Doc. #64 at 5). However, there is nothing to suggest TIAA-CREF retirement plan participants should not expect to have their retirement plans affected by interpleader expenses, as a normal course of TIAA-CREF's business as an insurance company.

Second, TIAA-CREF states that "at the request of the other parties (due to income tax issues related to the contract benefits), TIAA-CREF agreed to continue to hold the contract benefits, causing TIAA-CREF's continued involvement in this case." (Doc. #64 at 5). Here, TIAA-CREF admits their continued involvement in this case was by their own agreement. In fact, it appears to be at their own suggestion. *See* Counterclaim and Complaint for Interpleader (Doc. #3 at 4). If TIAA-CREF was concerned their involvement would cause

them to expend abnormal business expenses, thereby negatively affecting the retirement plans of its participants, it should have simply deposited the money with the Court and ended its involvement with the case. Such is the normal course for disinterested stakeholders. *See* Wright, Miller & Kane, Federal Practice & Procedure Civil 3d § 1719, p. 674-695 (2001). Instead, TIAA-CREF held the asset and voluntarily continued involvement in the case. Indeed, TIAA-CREF admits their voluntary possession of the asset *caused* their continued involvement in the case. (Doc. # 64 at 5). Further, TIAA-CREF's suggestion it held the asset at the request of the other parties, merely for the other parties' tax liability concerns, ignores the benefits TIAA-CREF has received by holding assets valued on 14 July 2006, at $384,795.00 (Doc. #47) since early 2005.

Third, TIAA-CREF states its attorneys have been "forced" to participate in this case in a significant manner, due to the complex issues related to the six contracts. (Doc. #64 at 3-4). Again, TIAA-CREF's continued involvement was caused by its voluntary holding of the asset not because it was "forced" to do so. Further, as TIAA-CREF later admits, its "attorneys did not attend the depositions of the other parties in the case, but one of TIAA-CREF's attorneys was forced to participate in the deposition of a TIAA employee. TIAA-CREF's attorneys did not directly participate in the unsuccessful mediation of the case but instead were available by telephone if needed. TIAA-CREF's attorneys also did not attend the trial of this case, with the Court's permission." (Doc. #64 at 6-7).

TIAA-CREF's unnecessary arguments show the "normal course of business" nature

of its involvement as an interpleader. TIAA-CREF's attorneys' abstention from the trial, mediation, and all the depositions, save one TIAA-CREF employee deposition, directly contradicts its argument that it has been involved in this case in a significant manner. Further, the Court has reviewed the detailed billing affidavit filed by TIAA-CREF's attorneys' and does not find anything so unusual as to circumvent the "normal course of business" exception applied to insurance companies.

The Court finds TIAA-CREF, as an insurance company, is subject to the normal course of business exception. "[T]he Eleventh Circuit has instructed courts that the 'normal course of business exception' can trump the three standard reasons for awarding attorney's fees." *Childs*, 209 F. Supp. 2d at 1256. Therefore, the Court does not find TIAA-CREF entitled to the award of attorneys' fees.

Alternatively, the Court denies TIAA-CREF's Motion because the fees are not "quite minor" and they would "greatly diminish the value of the asset." *Mandalay*, 21 F.3d at 383. TIAA-CREF requests this Court award attorneys' fees in the amount of $35,500.00, plus $1,114.16 of disbursements. This Motion was filed on 21 December 2006. As stated above, on 14 July 2006, the contracts were valued at $384,795.00 (Doc. #47). Thus, TIAA-CREF is seeking approximately 9.5 percent of the total value of the asset, which would greatly diminish its value. *See Childs*, 209 F. Supp. 2d at 1256 (finding fees over two percent of the total stake were not "quite minor"); *Primerica Life Ins. Co. v. Walden*, 170 F. Supp. 2d 1195, 1199-1200 (S.D. Ala. 2001) (finding less than one percent of total stake to be

reasonable); *Unum Life In. Co. of Am. v. Kaleo*, 2006 WL 1517257, at *3 (M.D. Fla. May 24, 2006) (finding an award of $6,698.00 from a $40,000.00 fund would "greatly diminish the value of the asset").

### III.    CONCLUSION

For the reasons stated above, it is the ORDER, JUDGMENT, and DECREE of the Court that the Motion for Attorneys' Fees (Doc. #64) is DENIED.

DONE this 16th day of April, 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE